UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X   Case No.: 21-cv-5840
DAVID FARHADIAN,
                                         **COMPLAINT**
                    Plaintiff,
       -against-

POLICE OFFICER MICHAEL C. MILTEER,     **JURY TRIAL DEMANDED**
individually, and THE COUNTY OF NASSAU,

                                   Defendants.
---------------------------------------------------------X

      Plaintiff, DAVID FARHADIAN, by his attorneys, HARFENIST KRAUT & PERLSTEIN, LLP, as and for a complaint, allege as follows:

### NATURE OF THE ACTION

1. This is an action seeking recovery for deprivation of Plaintiff David Farhadian's civil rights guaranteed to him under the Fourth and Fourteenth Amendments to the United States Constitution committed by the above named municipal defendants.

2. Additionally, this action seeks recovery under New York State Law for malicious prosecution.

3. The Plaintiff bases this action upon his illegal seizure by POLICE OFFICER MICHAEL C. MILTEER ("Milteer") and other members of the Nassau County Police Department on July 29, 2020, the execution of a false District Court Information by Milteer on July 30, 2020 and the subsequent malicious prosecution

which terminated with the dismissal of all charges on motion of the Nassau County District Attorney's Office on May 21, 2021.

## JURISDICTION

4. Jurisdiction is proper in this Court pursuant to 28 USC §1331, 28 USC §1343 and 42 USC §1983 in that the actions taken by the municipal defendants violated the Plaintiff's civil rights.

## VENUE

5. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since the Plaintiff was seized at his home in Great Neck and prosecuted in Mineola, both of which are located in the Eastern District of New York.

## PARTIES

6. Plaintiff, David Farhadian ("Farhadian") is a resident of the State of New York, residing at 8 Nirvana Avenue, Great Neck, New York.

7. Michael C. Milteer who is being sued in his individual capacity, is a Police Officer employed by the Nassau County Police Department. Upon information and belief, at all relevant times described herein, Milteer was acting under color of state law within the scope of his employment with the Nassau County Police Department.

## STATEMENT OF FACTS

8. On July 29, 2020, David was in the process of obtaining a divorce from his then wife, Anna.

9. Pursuant to a custody agreement in his matrimonial proceeding, David had visitation with his two sons AF and GF on July 29, 2020.

10. Under the terms of the interim Court Order, David was to return AF and GF to Anna on the evening of July 29, 2020.

11. More specifically, the custody agreement required David to bring AF and GF to a local CVS parking lot at a predetermined time.

12. At approximately 6:40 PM on July 29, 2020, David asked GF to wait on the porch for ten (10) minutes, while David prepared to bring AF and GF to CVS.

13. GF agreed that he would wait on the covered from porch of David's home until it was time to go to CVS.

14. On July 29, 2020, GF was ten (10) years old.

15. Prior to July 29, 2020, GF had never run away from David's home.

16. Rather than wait on the porch, GF immediately left and travelled to Anna's home, approximately one mile away.

17. Within seconds of asking GF to remain on the porch, David looked outside and realized that GF had left the porch.

18. David immediately began searching the outside of his house and then started searching the neighborhood for GF.

19. After being unable to locate GF, David brought AF to Anna at the CVS parking lot.

20. While in the parking lot of CVS, David called the Nassau County police to inform them that GF was missing.

21. The Nassau County police operator informed David that GF was in his mother's apartment and David then returned home.

22. Shortly after David returned to his home, various members of the Nassau County Police Department came to David's home.

23. When David came to the door to greet the police officers, they asked him whether he had locked GF out of the house.

24. David answered that he had not locked GF out of the house.

25. David mentioned to the police that there was a security camera which would show that GF was not locked out of the house.

26. The police officers indicated that they were not interested in seeing the security camera footage.

27. Instead, the police officers asked David to sit outside on the sidewalk.

28. David complied with the request and sat outside on the sidewalk in the full view of his neighbors for over an hour and a half.

29. During the time that David was sitting on the sidewalk, the police officers made various phone calls, but did not ask David any questions.

30. At approximately 8:40 PM, David was arrested for violating Penal Law §260.10(2), an A Misdemeanor.

31. David was handcuffed and transported from his home to an unknown police precinct.

32. David was then processed and held overnight until he was arraigned on the morning of July 30, 2020.

33. David retained a criminal defense attorney who was paid to represent David at more than ten (10) appearances until the criminal case was dismissed on May 21, 2021.

34. Upon information and belief, following the first appearance, David's criminal defense attorney provided the District Attorney with the security video from David's home.

35. The security video showed that GF was not locked out of David's home.

36. The security video showed that David asked GF to confirm that he would wait on the porch and then shortly after GF confirmed he would wait, GF walked off the porch.

5

37. Following receipt of the security video, the District Attorney's continued to prosecute David for at least nine (9) additional months.

38. Finally, on May 21, 2021, the criminal case was dismissed upon motion of the District Attorney's Office, pursuant to Criminal Procedure Law 170.30(1)(f).

39. During the May 21, 2021, Court Appearance, Nassau County District Court Judge Valerie Alexander asked the Assistant District Attorney what the legal impediment was to prosecuting David.

40. The Assistant District Attorney responded "[t]here is video of the incident which shows the facts of this case is not what is alleged in the information."

41. During the ten months that the criminal proceeding was pending, David was required to spend significant sums to defend the baseless charges.

42. During the ten months that the criminal matter was pending, David was caused to spend significant sums to defend motions in his matrimonial action which were predicated on the baseless criminal proceeding.

43. On July 15, 2021, a Notice of Claim was served on the County of Nassau, pursuant to General Municipal Law §50-e.

44. On August 26, 2021, a hearing on the claim was conducted pursuant to General Municipal Law §50-h.

45. Although more than thirty (30) days have elapsed since the service of the Notice of Claim, the County of Nassau has failed to adjust the claim.

## AS AND FOR A FIRST CAUSE OF ACTION
## FALSE ARREST IN VIOLATION OF PLAINTIFF'S
## FOURTH AND FOURTEENTH AMENDMENT RIGHTS

46. Plaintiff repeats, realleges and reiterates the allegations in paragraphs one through forty-five as if more fully set forth hereat.

47. On July 29, 2020, David was intentionally detained by Milteer.

48. In detaining David, Milteer was acting under color of state law and within the scope of his employment by the Nassau County Police Department.

49. David was aware of his detention.

50. David did not consent to being detained.

51. David's detention was not privileged as Milteer had no probable cause to believe that David had endangered the welfare of GF under Penal Law §260.10(2).

52. Pursuant to Penal Law §260.10(2), a person commits the misdemeanor offense of endangering the welfare of a child when:

> Being a parent, guardian or other person legally charged with the care or custody of a child less than eighteen years old, he or she fails or refuses to exercise reasonable diligence in the control of such child to prevent him or her from becoming an "abused child," a "neglected child," a "juvenile delinquent" or a "person in need of supervision," as those terms are defined in articles ten, three and seven of the family court act.

53. In and around the time that David was detained, Milteer obtained a written statement from GF in which he indicated that David told him to "stay outside" and that he was "upset and started crying" because David told him he "wasn't allowed inside the house."

54. Milteer had no probable cause to believe that based on this conduct, David had failed or refused to exercise reasonable diligence in the control of GF to prevent GF from becoming an abused child.

55. Milteer had no probable cause to believe that based on this conduct, David had failed or refused to exercise reasonable diligence in the control of GF to prevent GF from becoming a neglected child.

56. Milteer had no probable cause to believe that based on this conduct, David had failed or refused to exercise reasonable diligence in the control of GF to prevent GF from becoming a juvenile delinquent.

57. Milteer had no probable cause to believe that based on this conduct, David had failed or refused to exercise reasonable diligence in the control of GF to prevent GF from becoming a person in need of supervision.

58. David's detention was not privileged as Milteer had no reason to believe that GF had been locked out of David's home.

59. As a result of his illegal detention, David's Fourth and Fourteenth Amendment rights were violated.

60. As a proximate result of Defendants' intentional and malicious actions, David was greatly humiliated, injured in his reputation, caused to miss time from work, and has suffered great mental anguish causing damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

### AS AND FOR A SECOND CAUSE OF ACTION
### MALICIOUS PROSECUTION IN VIOLATION OF PLAINTIFF'S
### FOURTH AND FOURTEENTH AMENDMENT RIGHTS

61. Plaintiff repeats, realleges and reiterates the allegations in paragraphs one through sixty as if more fully set forth hereat.

62. In swearing to the Criminal Information, Milteer participated in the commencement of a criminal prosecution against David.

63. As a result of the commencement of the criminal prosecution, David was required to spend considerable sums to defend the baseless criminal charges before they were dismissed upon motion of the Nassau County District Attorney.

64. Milteer lacked probable cause to believe that David committed any criminal act at the time that he swore to the Criminal Information.

65. The lack of probable cause generally creates an inference of malice under Second Circuit case law.

66. Even assuming arguendo that there was probable cause to commence the criminal prosecution, the probable cause dissipated upon the Defendants being furnished the security video demonstrating the falsity of the criminal information.

67. Notwithstanding the receipt of the security video, the criminal prosecution was continued.

68. The dismissal of the criminal charges by the Nassau County District Court based on the Assistant District Attorney's motion predicated on the "video of the incident which shows the facts of this case is not what is alleged in the information" constitutes a favorable termination.

69. As a proximate result of the malicious prosecution, David's Fourth and Fourteenth Amendment rights were violated.

70. As a proximate result of Milteer's intentional and malicious actions, David was greatly humiliated, injured in his reputation and has suffered great mental anguish causing damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

## AS AND FOR A THIRD CAUSE OF ACTION
## MALICIOUS PROSECUTION CLAIM UNDER NEW YORK STATE LAW

71. Plaintiff repeats, realleges and reiterates the allegations in paragraphs one through seventy as if more fully set forth hereat.

72. It is well settled law that the elements of a malicious prosecution claim under New York law are substantially the same as a claim under 42 USC §1983.

73. Milteer and other employees of the County of Nassau participated in the commencement of the prosecution against David, despite a lack of probable cause to believe that David had committed a crime.

74. Milteer and other employees of the County of Nassau continued the prosecution of David, despite the security video demonstrating that David had not committed a crime.

75. The dismissal of the criminal charges by the Nassau County District Court based on the Assistant District Attorney's motion predicated on the "video of the incident which shows the facts of this case is not what is alleged in the information" constitutes a favorable termination.

76. As a proximate result of these acts, Milteer committed the tort of malicious prosecution under New York law.

77. As a proximate result of these acts, other employees of the County of Nassau committed the tort of malicious prosecution under New York law.

78. As Milteer and other employees of the County of Nassau acted within the scope of their employment in commencing and/or continuing the prosecution,

the County of Nassau is liable for their conduct under the doctrine of respondeat superior.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs respectfully demand the following relief:

a. For compensatory damages against all defendants in an amount to be proved at trial, but no less than THREE MILLION DOLLARS ($3,000,000.00).

b. For exemplary and punitive damages against all defendants in an amount to be proved at trial.

c. For attorneys fees pursuant to 42 U.S.C. §1988 against all defendants.

d. For such other and further relief as this Court may deem just and proper.

Dated: Lake Success, New York
October 20, 2021

                        Respectfully submitted,

                        HARFENIST KRAUT & PERLSTEIN, LLP
                        Attorneys for Plaintiff
                        3000 Marcus Avenue, Suite 2E1
                        Lake Success, New York 11042
                        (516) 355-9612

                 By: *Neil Torczyner*
                        NEIL TORCZYNER